U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2024 SEP -9 PM 1: 29

BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNIVERSITY OF VERMONT | * | Civil Action No. |
| STUDENTS FOR JUSTICE IN | * | |
| PALESTINE, | * | |
| Plaintiff | * | 2:24-cv-978 |
| | * | |
| v. | * | |
| | * | |
| THE UNIVERSITY OF | * | |
| VERMONT and STATE | * | |
| AGRICULTURAL COLLEGE; | * | |
| and LINA BALCOM, UVM | * | |
| Director of Student Life and | * | |
| JEROME BUDOMO, UVM | * | |
| Associate Director of Student Life, | * | |
| each in their Official Capacities, | * | |
| Defendants | * | |

## MOTION FOR PRELIMINARY INJUNCTION *PENDENT LITE*

UVM Students for Justice in Palestine move that the court issue a preliminary injunction ending the defendants' May 1, 2024 interim suspension of its status as a UVM student organization pending the resolution of this litigation.

## MEMORANDUM IN SUPPORT OF MOTION

**Introduction.**

In a word, as a state instrumentality, the defendants have invoked state power to muzzle UVMSJP, to delegitimize it, and to give anyone else second thoughts about associating with it.

The facts essential to the grant of this preliminary injunction request are simple and undisputed. They are set forth in the *Verified Complaint*. A ten-day student protest against the war in Gaza commenced on public forum property at UVM on the cold, rainy

1

Law Office of John L. Franco, Jr. 110 Main Street Burlington, Vermont 05401
(802) 864-7207
johnfrancolaw@aol.com

Sunday afternoon of April 28, 2024 until it was voluntarily disbanded on May 7-8[th]. UVMSJP participated in the protest. It was by all accounts a peaceful undertaking. vtcynic.com/news/live-updates-students-held-encampment-for-divestment-on-andrew-harris-commons..(The *Vermont Cynic* is the UVM student newspaper published by UVM on the internet).[1] It was recognized as such by UVM's own President in an email he widely distributed in late August. (*Verified Complaint* Attachment #7). The protesters included a member of the City Council of the City of Burlington.

Yet, on May 1, 2024, UVMSJP received a notice that its status as a UVM student organization was being suspended because

> it may pose a threat to the health, safety, or wellbeing of persons within the university community and our guests... Please inform all individuals affiliated with SJP that while the SJP is under interim suspension all organization activities must cease. This interim suspension will permit organization meetings related to any internal investigation. (*Verified Complaint* Attachment #1).

Although this notice listed various alleged UVM policy infractions, it was not accompanied by any facts specifying the who-what-when-where-how particulars of the alleged violations. *Town of Randolph v. Estate of White*, 166 Vt. 280, 693 A.2d 694, 696 (1997) [due process is not satisfied unless the party is provided with the factual basis of the allegations].

Their suspension policy has an *Alice-In Wonderland* quality: first the sentence, then the verdict. It provides no opportunity for hearing prior to or regarding on such an interim suspension. The suspension remains in effect pending the ensuing

---

[1] Because it is published by UVM on the internet, it is self- authenticating as an official publication of a public authority under F.R.E. 902(5). See *Hawkes v. BSI Financial, Inc.*, 444 F.Supp.3d 260, 266 (D.Mass. 2020); *Rote v. Zel Custom Mfg.*, 383 F.Supp.3d 779, 785 (S.D. Ohio, 2020); *U.S. v. Iverson*, 818 F.3d 1015, 1021-22 (10th Cir. 2016); *Chen v. Holder*, 715 F.3d 202, 212 (7th Cir. 2013); *Williams v. Long*, 585 F. Supp.2d 679, 686-91 (D. Md. 2008) and cases cited therein.

2

"investigation" of the charges to support it. It continues in effect through any ensuing sanction proceedings. For this reason, this policy also violates due process. *White, supra* c.f. *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 13 (1978) [the party must be informed of the procedures available to contest the proposed action].

Despite the promise in the policy that the investigation to support the suspension would be undertaken and completed as soon as possible, it was not. The suspension has remained in effect now for over four months. It has remained in effect despite upon information and belief that the suspension of a UVM student organization for participation in a protest or demonstration is unprecedented. The most outspoken UVMSJP member who was the subject of individual disciplinary proceedings related to the protest was cleared on May 10, 2024 of the verbatim charges that were leveled against UVMSJP. (*Verified Complaint* Attachments #5 and #6).

During the summer and again at the start of the fall 2024 semester the defendants refused to "meet and confer" with UVMSJP's faculty advisor and counsel to discuss rescinding this suspension, necessitating this action.

I.   **THE INTERIM SUSPENSION OF UVMSJP WAS AND IS AN UNCONSTITUTIONAL PRIOR RESTRAINT OF ITS FREE SPEECH RIGHTS.**

    A.   **UVM Is an Instrumentality of the State of Vermont Subject to the First Amendment.**

UVM is an instrumentality of the State of Vermont, but is not an administrative agency of the State. *Sprague v. UVM*, 661 F.Supp. 1132, 1137 (D.Vt. 1987, Billings, J.). UVM does not enjoy 11th Amendment immunity. *Honadle v. UVM*, 115 F.Supp. 2d 468, 472 (D.Vt. 2000, Sessions, J.) Because it is a state instrumentality, the First

3

Amendment's protections of free speech and assembly apply to it per *Tinker v. Des Moines,* 393 U.S. 503, 506 (1969), and *Healy v. James* 408 U.S. 169, 184 (1972). *Ware v. UVM,* 2:22-cv-212 at 92-94; 99 (D. Vt. Mar. 7, 2024, Sessions, J.). They hold that constitutional rights are not shed at the schoolhouse door, especially in the university context. Director Balcom as a UVM officer issued the suspension directive.

    **B.**    **Suspension or Withdrawal of a State University's Recognition of a Student Group is a Prior Restraint of Its First Amendment Rights.**

    **1) Prior restraint.**

A prior restraint restricts speech in advance of actual expression. *U.S. v. Quattrone,* 402 F.3d 304, 309 (2nd Cir. 2005, Sotomayor, J.) Prior restraint includes a facially neutral law that sets up an administrative apparatus with power and discretion to weed out disfavored expression before it occurs. *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150-51 (1969); *Citizens United v. Schneiderman,* 882 F.3d 374, 386 (2nd Cir, 2018). An action may constitute a prior restraint even if it is not content based. *Ware, supra; Beal v. Stern,* 184 F.3d 117, 124 (2nd Cir. 1999).

Prior restraints constitute the most serious and least tolerable infringements on freedoms of speech. A prior restraint is not constitutionally inoffensive merely because it is temporary. Imposition of a prior restraint therefore bears a heavy presumption against its constitutionality. *Quattrone, supra* at 309-312. In the seminal case *New York Times Co. v. United States,* 403 U.S. 713 (1971), prior restraint of the publication of the Pentagon Papers was first sought not by administrative self-help as UVM has done here, but in proceedings brought before two federal District and Circuit Appeals courts.

4

Despite the authority of the Espionage Act, prior restraint was denied at all judicial levels because of the government's very high burden of justifying it.

### 2) Non recognition of student groups as a form of prior restraint by state colleges and universities.

The year following the *Pentagon Papers* case, *Healy* held that a state college's refusal to recognize Students for a Democratic Society as a student organization was a prior restraint of the organization's protected First Amendment rights.

> It is to be remembered that the effect of the College's denial of recognition was a form of prior restraint, denying to the petitioner's organization the range of associational activities described.... While a college has a legitimate interest in preventing disruption on the campus, which under circumstances requiring safeguarding of that interest may justify such restraint, a 'heavy burden' rests on the college to demonstrate the appropriateness of that action. 408 U.S. at 184.

Relying on *Tinker v. Des Moines*, the Supreme Court held not only that that students and teachers do not shed their constitutional rights to freedom of speech at the schoolhouse gate, but that principle applies with even greater force at colleges and universities as a marketplace of ideas. The rights protected include the right to associate to further their personal beliefs. *Id.* at 180-182. To justify such a suspension, the acts complained of must materially and substantially disrupt the work and discipline of the school. The record must show a substantial basis for that conclusion, and not be based upon surmise or speculation. *Id.* at 189-190 citing *Tinker* at 513. That others complaint that they find the views expressed to be offensive does not justify this denial of First Amendment rights. *Id.* at 187-188.

The denial of official recognition burdens or abridges that right. The primary impediment to free association flowing from nonrecognition is denial of the use of campus facilities for meeting and other appropriate purposes. The students in *Healy* were

5

not allowed to hold a meeting in a campus coffee shop, denied use of the student newspaper, and use of campus bulletin boards. Therefore, nonrecognition of a student group by a university constitutes an indirect interference with those fundamental rights.

> If an organization is to remain a viable entity in a campus community in which new students enter on a regular basis, it must possess the means of communicating with these students. Moreover, an organization's ability to participate in the intellectual give and take of campus debate, and to pursue its stated purposes is limited by denial of access to the customary media for communicating along with the administration, faculty members, and other students. Such impediments cannot be viewed as insubstantial...(T)he group's possible ability to exist outside of the campus community does not ameliorate the disabilities... 452 U.S. at 181

This is precisely the disability that UVM has imposed on UVMSJP now for over four months.

*Healy* was soon followed by one of the first of its kind cases, *Gay Students Organization of the University of New Hampshire v. Bonner*, 367 F.Supp. 1088 (D.N.H. 1974). That court 50 years ago observed something that UVM now continues to overlook: *in loco parentis* is long dead. *Id.* 1093-95. "With the lowering of the age of majority to eighteen, the *in loco parentis* rationale for vesting unbridled discretion in university officials is no longer tenable... The demise of the privilege concept of education at public universities is clearly upon us." The constitution applies to college campuses. It followed *Healy*'s reasoning that equal access to university resources is vital. The development of the  fundamental rights of speech, assembly,  and petition requires activities necessary to their proper exercise. Without them the rights "would be hollow indeed." Student organizations may not be denied those rights which are necessary to its maintenance and orderly growth. Absent justification, a student organization may not be denied those rights, and absent certain well-defined justifications, the university cannot

6

deny the organization the use of its facilities for those purposes. A university may protect itself against an activity which materially and substantially disrupts the normal operations of the school. The university must present substantial evidence before recognition or withdrawal of recognition can be withdrawn. *Id.* at 1099.

Of more recent vintage was the reversal of the withdrawal of the recognition of student Republicans in *College Republicans at San Francisco State University v. Reed*, 523 F.Supp.2d 1005, 1006-16 (N.D. Cal. 2007). College Republicans could not be suspended as a student organization for at a rally desecrating Hamas and Hezbollah flags with "Allah" written in Arabic script upon them. It reasoned that unpopular speech not only was protected, but that its protection was essential to the First Amendment. The University's laudable interest in promoting "civil" discourse on campus can from time to time come into direct conflict with First Amendment rights which entitle people in some settings to express themselves in unreasoned, disrespectful, and intensely emotional ways. Thus, a student might simultaneously behave in a manner that is patently inconsistent with civility goals but that is protected under the First Amendment. There are very important differences between primary and secondary schools on one hand, and colleges and universities on the other. College and university students are not children, are by law emancipated, and can vote. First Amendment protections should not apply with less force on college campuses than in the community at large. Federal courts have enjoined regulations in colleges or universities which purport to prohibit acts of intolerance.

"It is important to emphasize that it is *controversial* expression that is the First Amendment's highest duty to protect. By definition, popular views need no protection. It

7

is *unpopular* notions that re in the greatest peril..."*Id.* at 1018-19. Precisely because there is a much greater risk that unpopular views or controversial ideas will trigger retaliatory action and it is the people who do so who are more likely to be deterred by the possibility of punishment. "So, the likelihood that the First Amendment will be offended increases with the increase in the proportion of the expressive activity that is captured only in the outer sphere that is controversial or unpopular." There is an emotional dimension to the effectiveness of communication. Speakers on significant or controversial issues often want their audience to understand how passionately they feel about the subject or the message.  For many people what matters most about communication is whether it inspires emotions in the audience, whether it has the emotional power to move the audience to action or to a different level, of interest in or commitment to an idea or cause. This can be the single most important aspect of the expressive act.  The Vermont Supreme Court has said much the same about the alleged offensiveness of the speech. *State of Vermont v. Tracy*, 2015 VT 111, ¶¶20, 38  130 A.3d 196. Citing *Texas v. Johnson*, 491 U.S. 397, 409 (1989) [flag desecration is protected] and *Snyder v. Phelps*, 562 U.S. 443, 455-460 (2011) (fundamentalist church picketing a soldier's funeral with highly inflammatory signs particularly hurtful to the soldier's father] it held that the provocative nature of speech is the very reason it is constitutionally protected. Offensiveness is not enough. To fall outside of protected speech "it must be so inflammatory that it is akin to dropping a match into a pool of gasoline."

8

## II.     UVMSJP IS ENTITLED TO A PRELIMINARY INJUNCTION TO RESTORE *PENDENTE LITE* ITS STUDENT ORGANIZATION STATUS THAT EXISTED PRIOR TO MAY 1, 2024.

A plaintiff is entitled to a preliminary injunction if it shows that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that the injunction is in the public interest. *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008); *Vermont Federation of Sportsmen's Clubs v. Birmingham*, No, 2:23-cv-710 @ 7 (D.Vt. July 18, 2024, Sessions, J.).

For the reasons set forth above and in the *Verified Complaint*, UVMSJP easily satisfies this standard. Where, as here, a party seeks an injunction to protect or regain a constitutional right, the courts do not require a showing of irreparable harm. *Huminski v. Rutland County*, 134 F. Supp.2d 362, 364 (2001, Murtha, J.). When an injunction is sought to protect First Amendment rights, likelihood of success of the merits is established by the irreparable harm and together merge into a single threshold requirement. *Id.* A violation of First Amendment Rights constitutes per se irreparable injury. *Id.; Elrod v. Burns,* 427 U.S. 347, 373 (1976). "Violations of the First Amendment are presumed irreparable." *Tunick v. Safir*, 209 F.3d 67, 70 (2nd Cir. 2000); *Mitchell v. Cuomo* 748 F.2d 804, 806 (2nd Cir. 1984); *American Patriot Express* v. *City of Glens Falls,* 474 F. Supp. 3d, 508, 525 (N.D. N.Y. 2020). UVM's lack of prior notice or opportunity to be heard is an aggravating factor because it renders its prior restraint of UVMSJP invalid. *Quattrone, supra* at 312. In cases involving constitutional deprivation it is the defendants that must meet their evidentiary burden on the relevant constitutional

9

questions in order to prevail. *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004). This record does not support their burden.

## III.    SECURITY MUST BE WAIVED.

Given that this is a First Amendment prior restraint case, no security may properly be required of UVMSJP under F.R.Civ.P. 65(c) as a condition of issuance of the preliminary injunction. That itself would serve as a form of forbidden prior restraint. *Shuttlesworth, supra; Forsyth Country, Georgia v. Nationalist Movement*, 505 U.S. 123, 130 (1992); *Church of the KKK v. Gary, Ind.*, 334 F.3d 676, 670-82 (7th Cir. 2003).

## Conclusion.

The request injunction *pendente lite* must issue forthwith.

Dated at Burlington, Vermont this 9th day of September, 2024.

John L. Franco, Jr.
Attorney for
UVM Students for Justice
in Palestine

10