*University of Vermont Students for Justice in Palestine v. University of Vermont, et al.*

Case No. 2:24-cv-978

# Exhibit A

# to

# Foundation for Individual Rights and Expression's Motion for Leave to File Brief *Amicus Curiae*

# UNITED STATES DISTRICT COURT
# DISTRICT OF VERMONT

| | |
|---|---|
| UNIVERISTY OF VERMONT STUDENTS FOR JUSTICE IN PALESTINE,<br><br>*Plaintiff*,<br><br>v.<br><br>THE UNIVERSITY OF VERMONT AND STATE AGRICULTURAL COLLEGE, et al.,<br><br>*Defendants*. | Case Number: 2:24-cv-978<br><br>Hon. William K. Sessions III<br><br>**[PROPOSED] BRIEF OF AMICUS CURIAE THE FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION IN SUPPORT OF NEITHER PARTY** |

The Foundation for Individual Rights and Expression writes in support of neither party to apprise the Court of longstanding precedent holding the First Amendment fully protects students' rights of assembly and expression on public university campuses, even when some find the student expression offensive or disagreeable.

## INTEREST OF *AMICUS CURIAE*

The Foundation for Individual Rights and Expression ("FIRE") is a nonpartisan nonprofit organization dedicated to promoting and protecting free expression, particularly at our nation's institutions of higher education. Since 1999, FIRE has successfully defended the expressive rights and academic freedom of thousands of students and faculty members across the United States and the ideological spectrum. FIRE defends these fundamental rights through public commentary and advocacy, research, litigation, and participation as *amicus curiae* in

cases that implicate student and faculty rights, like the one now before this Court. *See*, *e.g.*, Brief of Foundation for Individual Rights and Expression, American Civil Liberties Union, *et al.* as *Amici Curiae* Supporting Plaintiff, *Univ. of Md. Students for Just. in Palestine v. Bd. of Regents of the Univ. Sys. of Md.*, (D. Md. September 25, 2024) (No. 24-cv-2683-PJM) 2024 WL 4361863; Brief of Foundation for Individual Rights and Expression as *Amicus Curiae* In Support of Neither Party, *Kestenbaum v. President and Fellows of Harvard Coll.*, (D. Mass. July 16, 2024) (No. 1:24-cv-10092-RGS) 2024 WL 3658793. FIRE believes students can best achieve success in our democracy only if the law remains unequivocally on the side of robust campus free speech rights.

## INTRODUCTION

More than a half-century ago, the Supreme Court declared that "state colleges and universities are not enclaves immune from the sweep of the First Amendment." *Healy v. James*, 408 U.S. 169, 180 (1972). The First Amendment binds public institutions like the University of Vermont as government actors, and public university students retain full First Amendment rights to free expression and freedom of association. *Id.* Accordingly, a public university's actions—including the imposition of disciplinary sanctions,[1] the recognition and funding of student organizations,[2] and the maintenance of policies implicating student and faculty expression[3]—must comply with the First Amendment.

---

[1] *Papish v. Bd. of Curators of the Univ. of Mo.*, 410 U.S. 667, 667–68 (1973).
[2] *Bd. of Regents of the Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 221 (2000).
[3] *See, e.g.*, *Dambrot v. Central Mich. Univ.*, 55 F.3d 1177 (6th Cir. 1995).

2

To be sure, public university administrators may discipline students and organizations that engage in violence or violate lawful school policies. They may also institute reasonable time, place, and manner restrictions on expressive activity.[4] But any such restrictions must be content and viewpoint neutral, narrowly tailored to serve a significant government interest, and must leave open ample alternative channels for communication.[5] Further, "[f]or the University, by regulation, to cast disapproval on particular viewpoints of its students risks the suppression of free speech and creative inquiry in one of the vital centers for the nation's intellectual life, its college and university campuses." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 836 (1995). Thus, the First Amendment flatly bars public universities from punishing students or student organizations for their organization's expressed opinion or perspective. *Id*.

Still, some institutions of higher learning fail to heed the Supreme Court's clear directives. That is why FIRE has filed lawsuits on behalf of, for example, student organizations stopped from promoting single-payer healthcare,[6] prevented from using a university logo for marijuana legalization advocacy,[7] or banned from hanging pro-life flyers on college bulletin boards.[8] The viewpoints expressed by student organizations at public universities cannot justify the suppression of their speech.

---

[4] *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Univ. of Cincinnati Chapter of Young Ams. For Liberty v. Williams*, No. 1:12-cv-155, 2012 WL 2160969, at *20 (S.D. Ohio June 12, 2012); *Pro-Life Cougars v. Univ. of Hous.*, 259 F. Supp. 2d 575, 581 (S.D. Tex. 2003).
[5] *Clark v. Cmty. for Creative Non-Violence,* 468 U.S. 288, 293 (1984).
[6] Complaint, *Si v. Abuhamad*, No. 2:21-cv-00467, (E.D. Va. Aug. 17, 2021), ECF No. 1 (available at https://www.thefire.org/research-learn/si-v-evms-complaint).
[7] *See Gerlich v. Leath*, 861 F.3d 697 (8th Cir. 2017) (en banc) (affirming permanent injunction).
[8] *See Flores v. Bennett*, No. 22-16762, 2023 WL 4946605 (9th Cir. July 17, 2023 (affirming preliminary injunction).

Over the past year, the Israeli-Palestinian conflict has fueled censorship of campus speakers on both sides. Across the nation, state government officials, including public college and university administrators, routinely suppress, punish, and ban students and student organizations just for *speaking* about the conflict. In September 2024, Maryland Governor Wes Moore banned all "expressive events" from University of Maryland campuses on the anniversary of Hamas's October 7th attacks on Israel.[9] Florida Governor Ron DeSantis demanded the derecognition of all Students for Justice in Palestine (SJP) chapters from University of Florida campuses. Texas Governor Greg Abbot called for automatic discipline of University of Texas SJP and Palestinian Solidarity chapters. The University of Southern California forced a professor to teach remotely for his pro-Israel comments to pro-Palestine activists. Many more public and private colleges and universities have taken similar steps to stop both student and faculty organizations and individual students and faculty from expressing a multitude of views on the conflict.

Universities have sought to justify their restrictions of student and faculty speech on the conflict based on the discomfort of others hearing it. But the university campus is "peculiarly the 'marketplace of ideas,'" *Healy*, 408 U.S. at 180, and "constitutional rights may not be denied simply because of hostility to their assertion or exercise." *Watson v. City of Memphis*, 373 U.S. 526, 535 (1963). To fulfill their educational mission and their unique role in our free society, universities must foster a "diversity of views" and "intellectual advancement" through "discord and dissent."

---

[9] The U.S. District Court for the District of Maryland granted a preliminary injunction against the ban shortly thereafter. *Univ. of Md. Students for Just. in Palestine*, 2024 WL 4361863, at *13–14.

4

*Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*, 605 F.3d 703, 708 (9th Cir. 2010) (citing *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967)).

The case now before this Court implicates the rights of student organizations to express their opinions free from punishment, derecognition, and on-campus speech bans. *Amicus* FIRE takes no position regarding the extent of University of Vermont Students for Justice in Palestine's (UVM SJP's) firsthand involvement in alleged policy violations; whether UVM SJP violated any particular policy; or whether UVM has previously refused to similarly punish other student organizations for similar events. FIRE therefore does not write to advocate for any party. However, FIRE respectfully asks the Court to affirm the longstanding First Amendment protection afforded to student organizations to express viewpoints on a public university campus, free from censorship or coercion, regardless of any "uncomfortable" feelings others experience as a result of organizations' protected speech.

## ARGUMENT

**I.  FIRE's Experience Defending Free Speech on Campuses Nationwide Demonstrates that Public Universities Are Silencing Protected Speech on the Israeli-Palestinian Conflict.**

In the year since Hamas's October 7, 2023 attacks on Israel, colleges and universities have censored students, student groups, and faculty across the nation and on all sides of the political debate surrounding the conflict. FIRE has consistently defended the expressive rights of those students and faculty. For example, FIRE fought for the expressive rights of student organizations at the University of Wisconsin-Madison who were suspended for their pro-Palestinian views. *Letter from*

5

*FIRE to UW-Madison President Jennifer Mnookin*, May 16, 2024, https://www.thefire.org/research-learn/fire-letter-university-wisconsin-madison-may-16-2024. FIRE likewise defended a pro-Israel professor's free speech rights when his university punished him for speech critical of pro-Palestinian protestors. *Letter from FIRE to University of Southern California President Carol Folt*, Nov. 20, 2023, https://www.thefire.org/research-learn/fire-letter-university-southern-california-november-20-2023.

When the University of Texas at Austin—at the direction of Governor Greg Abbott—employed riot police to forcibly disperse and arrest peaceful pro-Palestinian protestors, FIRE again stepped in to defend their First Amendment rights.[10] When Hunter College cited unspecified concerns about safety to cancel a screening of the film "Israelism," FIRE reminded the college of its First Amendment obligation to allow even controversial expressive events.[11] FIRE similarly wrote to the University of Vermont last October when it thwarted a planned in-person lecture by Palestinian writer and poet Mohammed el-Kurd, moving it to an online-only format based on unspecified security concerns.[12]

Student groups in particular have faced ongoing censorship. For example, when Florida Governor Ron DeSantis ordered the University of Florida (UF) to automatically derecognize all UF SJP student chapters, FIRE called on the UF

---

[10] Letter from FIRE to Jay Hartzell, University of Texas-Austin President, Apr. 25, 2024, https://www.thefire.org/research-learn/fire-letter-university-texas-austin-april-25-2024-0.
[11] Letter from FIRE to Ann Kirschner, President of Hunter College, Jan. 3, 2024, https://www.thefire.org/research-learn/fire-letter-hunter-college-january-3-2024.
[12] Letter from FIRE to Suresh Garimella, President of University of Vermont, Oct. 25, 2023, https://www.thefire.org/research-learn/fire-letter-university-vermont-october-25-2023.

president to refuse to comply, as demanded by clearly established law.[13] Similarly, the Ohio State University suspended the campus's Central Ohio Revolutionary Socialists student group, alleging the student group supported terrorism because it used a logo associated with the Popular Front for the Liberation of Palestine.[14] The university lifted the suspension after FIRE explained the group's use of the logo, absent more, constituted protected speech.[15]

Pro-Palestinian groups aren't alone in facing censorship post-October 7th. The City University of New York canceled Hillel-sponsored Israeli Memorial Day and Independence Day events at Baruch College and Kingsborough Community College. FIRE, in response, demanded CUNY allow future expressive events to proceed.[16]

In these and other matters, FIRE has called on public institutions of higher learning to adhere to the long-settled First Amendment holdings that require the protection of student and faculty expression. As the Court considers this case, *amicus* FIRE asks that it recognize and reaffirm these core First Amendment principles and precedents to protect student organizations as speakers, both now and in the future, from punishment for controversial yet fully protected expression.

---

[13] Letter from FIRE to Ben Sasse, University of Florida President, Oct. 23, 2023, https://www.thefire.org/research-learn/fire-letter-university-florida-october-25-2023.

[14] Letter from FIRE to Ted Carter, President of The Ohio State University, Jan. 29, 2024, https://www.thefire.org/research-learn/fire-letter-ohio-state-university-january-29-2024.

[15] *Ohio State University: Student Group Suspended After Social Media Post Accused It of Supporting Terrorism,* FIRE, https://www.thefire.org/cases/ohio-state-university-student-group-suspended-after-social-media-post-accused-it-supporting (last visited Oct. 17, 2024).

[16] Letter from FIRE to Félix V. Matos Rodríguez, Chancellor of CUNY, June 7, 2024, https://www.thefire.org/research-learn/fire-letter-cuny-chancellor-june-7-2024.

## II. The First Amendment Applies in Full for Students on Public Campuses Like the University of Vermont.

The expressive freedoms of students and student organizations on campus are commensurate with those of the public at large.[17] The Supreme Court has identified free expression on college campuses as a "special concern" of the First Amendment, recognizing the essential value public colleges and universities have in our democratic society. The First Amendment's protection against viewpoint discrimination, an "egregious" constitutional violation,[18] is therefore of equal concern on campus, as off. The fact some student speech may offend some who hear it does not alter the First Amendment's protection against censorship.

### A. More than fifty years of Supreme Court precedent makes clear the First Amendment protects student expression on public campuses.

The First Amendment requires public universities to facilitate "wide exposure to that robust exchange of ideas which discovers truth out of a multitude of tongues, [rather] than through any kind of authoritative selection." *Keyishian*, 385 U.S. at 603 (internal quotations omitted). Without the "free[dom] to inquire, to study and to evaluate, to gain new maturity and understanding" on campus, "our civilization will stagnate and die." *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957). Therefore, "the mere dissemination of ideas—no matter how offensive to good taste—on a state university campus may not be shut off in the name alone of 'conventions of decency.'" *Papish v. Bd. of Curators of the Univ. of Mo.*, 410 U.S. 667, 670 (1973).

---

[17] *See Widmar v. Vincent*, 454 U.S. 263, 280 (1981).
[18] S*ee Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 836 (1995).

In *Healy*, the Supreme Court affirmed these principles apply to student organizations. There, a public college president violated the First Amendment when he refused to recognize a chapter of Students for Democratic Society (SDS) based on the chapter's ties to the national SDS organization, arguing the request came on the heels of a "climate of unrest" replete with "widespread civil disobedience . . . accompanied by the seizure of buildings, vandalism, and arson," causing some "colleges [to] shut down altogether." *Healy*, 408 U.S. at 171–172, 188. The Court noted, however, that until a group actually violated lawful policies, the "denial of official recognition, without justification, to college organizations burdens or abridges" First Amendment rights, as "[t]he vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." *Healy*, 408 U.S. at 180 (quoting *Shelton v. Tucker*, 364 U.S. 479, 487 (1960)).

Although UVM's stated reasons for the months-long "interim" ban on UVM SJP include allegations of policy violations, they also include "encouraging" policy violations and disruption of operations based on alleged discomfort (ECF No. 1-2, ECF No. 8, at 6–7, 11.) FIRE takes no position on the merits of the allegations against the Plaintiff here. But to the extent the allegations involve protected expression, whatever its ultimate holding, this Court should reaffirm that viewpoint discrimination on a public university campus violates the First Amendment.

### B. The First Amendment prohibits viewpoint discrimination against students and student organizations.

The First Amendment protects students' expressive rights on public campuses and bars public universities from punishing or restricting student organizations

9

because it disapproves of their message. *See, e.g., Iota Xi Chapter of Sigma Chi Fraternity v. George Mason Univ.*, 993 F.2d 386 (4th Cir. 1993) (holding a university's discipline of students for holding a subjectively offensive event violates the students' First Amendment rights). Targeting "particular views taken by speakers on a subject" constitutes "an egregious form" of censorship. *Rosenberger*, 515 U.S. at 829. The state cannot "single out a particular idea for suppression because it is dangerous or disfavored." *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 37 (2d Cir. 2018) (quoting *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 541 (2001)) (alterations omitted)).

For a university "to cast disapproval on particular viewpoints" on campus "risks the suppression of free speech and creative inquiry in one of the vital centers for the Nation's intellectual life." *Rosenberger*, 515 U.S. at 836. Authorities "must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id.* at 829. And authorities may only "regulate speech so long as the restriction is reasonable and viewpoint neutral." *Koala v. Khosla*, 931 F.3d 887, 900 (9th Cir. 2019).

The prohibition against viewpoint discrimination protects student groups with unpopular views across the political spectrum. It protected the rights of LGBTQ student organizations in New Hampshire and Virginia to host social functions and be recognized as official student groups, respectively. *Gay Students Org. of Univ. of N.H. v. Bonner*, 509 F.2d 652, 661–62 (1st Cir. 1974); *Gay Alliance of Students v. Matthews*, 544 F.2d 162 (4th Cir. 1976). It likewise protected the rights of a conservative student

magazine that lost funding after publishing a story mocking "trigger warnings" and "safe spaces." *Koala*, 931 F.3d at 892.

UVM SJP's verified complaint alleges that the group's punishment was due in part to its view and advocating for the violation of particular UVM policies—itself a protected viewpoint.[19] Because of the longstanding and outright ban on viewpoint discrimination, this Court must, therefore, carefully assess whether opinion-based punishment is at play in this case.

### C. Emotional discomfort cannot justify silencing student speech on public campuses.

The Supreme Court has repeatedly, consistently, and clearly held that the First Amendment protects campus expression others find deeply offensive. In *Papish*, the Supreme Court held the First Amendment protected distribution of an underground student newspaper on campus containing a "political cartoon . . . depicting policemen raping the Statue of Liberty and the goddess of Justice." 410 U.S. 667–68. The burning of the American flag in protest is similarly protected, despite the palpable offense the act caused many. *Texas v. Johnson*, 491 U.S. 397, 414 (1989). And in *Matal v. Tam*, the Court held the First Amendment protects the right of the Asian-American rock band, "The Slants," to trademark their name despite that use of a racial slur because it is "the proudest boast of our free speech jurisprudence . . . that we protect the freedom to express the thought that we

---

[19] Speech advocating lawbreaking can only be punished if it is directed to incite or produce imminent lawless action and is "likely to incite or produce such action" because advocacy "is not the same as preparing a group for violent action and steeling it to such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (internal quotation marks omitted).

11

hate." 582 U.S. 218, 246 (2017). In the words of Justice Alito: "Giving offense is a viewpoint." *Id*. at 243. The First Amendment's protection of offensive speech is of even higher value on public university campuses. In fact, offensive speech is in line with public universities *raison d'etre*: "to provide that atmosphere which is most conducive to speculation, experiment and creation," *Sweezy*, 354 U.S. at 263 (1957) (Frankfurter, J., concurring).

The University of Maryland just learned this lesson. On October 1, 2024, U.S. District Court Judge Peter Messitte preliminarily enjoined the University of Maryland from upholding a ban on "all student-sponsored events [planned for October 7, 2024] due to an 'overwhelming' number of complaints." The court enjoined the ban because, it said, "[t]his is a matter of law, not wounded feelings. Free speech as guaranteed by the First Amendment may be the most important law this country has. In many ways, all other basic freedoms . . . depend upon it." *Univ. of Md. Students for Just. in Palestine*, 2024 WL 4361863, at *9. That is one reason why, even when words cause pain, "we cannot react to that pain by punishing the speaker. As a Nation we have chosen a different course—to protect even hurtful speech on public issues to ensure that we do not stifle public debate." *Snyder v. Phelps*, 562 U.S. 443, 461 (2011).

To hold otherwise would permit a "heckler's veto." When the government elevates the concerns of the listener over the rights of the speaker, "[t]he speech is targeted, after all, based on the government's disapproval of the speaker's choice of message." *Matal*, 582 U.S. at 250 (Kennedy, J., concurring in part). Even where

listeners engage in and threaten violence against a speaker for their words, the First Amendment prohibits punishing or restricting the speaker. *Meinecke v. City of Seattle*, 99 F.4th 514, 518–519 (9th Cir. 2024). Courts recognize a "heckler's veto" is simply viewpoint discrimination by another name.

FIRE asks this Court to recognize that on a public university campus, emotional discomfort caused by a political message or peaceful protest cannot support restricting speakers' ability to freely express their message.

## CONCLUSION

In deciding this case, FIRE urges this Court to affirm the First Amendment's protections of students' and student organizations' speech on public university campuses.

Dated: October 18, 2024

Respectfully submitted,

/s/ James M. Diaz
James M. Diaz
(Vermont Bar No. 5014)
Lindsie D. Rank
(Pennsylvania Bar No. 328393; Virginia Bar No. 93817; D.C. Bar No. 1644838)
Haley Gluhanich
(Pennsylvania Bar No. 332349)
FOUNDATION FOR INDIVIDUAL
 RIGHTS AND EXPRESSION
510 Walnut St., Ste. 900
Philadelphia, PA 19106
(215) 717-3473
jay.diaz@thefire.org
lindsie.rank@thefire.org
haley.gluhanich@thefire.org

Attorneys for Amicus Curiae Foundation for Individual Rights and Expression

13